IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY ANN FREEMAN, <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 1:24-CV-02243-JRA <br><br> JUDGE JOHN R. ADAMS <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> REPORT AND RECOMMENDATION |

### INTRODUCTION

Plaintiff Kimberly Freeman challenges the Commissioner of Social Security's decision denying her applications for Medicare-Qualified Government Employee (MQGE) benefits and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Dec. 26, 2024). For the reasons below, I recommend the District Court **REVERSE** the Commissioner's decision and **REMAND** for additional proceedings consistent with this Report and Recommendation.

### PROCEDURAL HISTORY

Ms. Freeman applied for disability insurance benefits (DIB) and SSI in March 2012, alleging she became disabled beginning in May 2008. (*See* Tr. 76). In these applications, Ms. Freeman claimed disability due to recurrent sinusitis, a history of right knee surgery, migraines, borderline intellectual functioning, and bilateral carpal tunnel syndrome. (*See* Tr. 79). After these claims were denied initially and on reconsideration, Ms. Freeman requested a hearing before an

1

administrative law judge. (*See* Tr. 76). On April 29, 2013, Ms. Freeman (represented by counsel) and a vocational expert (VE) testified before the ALJ. (*See id.*). On June 7, 2013, the ALJ determined Ms. Freeman was not disabled. (Tr. 86).

On September 2, 2022, Ms. Freeman applied for Medicare coverage as a Medicare-qualified government employee and for SSI, alleging she became disabled on May 16, 2022 as a result of bilateral carpal tunnel syndrome and issues with her hip, foot, and knee. (Tr. 222, 266, 291). After these claims were denied initially and on reconsideration, Ms. Freeman requested a hearing before an ALJ. (Tr. 100-21, 123-42, 164). On September 25, 2023, Ms. Freeman amended her application for SSI and requested a closed period of disability from May 16, 2022 to May 16, 2023. (Tr. 265). On November 8, 2023, Ms. Freeman (represented by counsel) and a VE testified before the ALJ. (Tr. 36-62). On December 20, 2023, the ALJ determined Ms. Freeman was not disabled, both for the purpose of establishing Medicare coverage as a Medicare-qualified government employee and establishing entitlement to SSI. (Tr. 30). On November 5, 2024, the Appeals Council denied Ms. Freeman's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. §§ 404.981, 416.1481). Ms. Freeman timely filed this action on December 26, 2024. (ECF #1).

FACTUAL BACKGROUND

I.      Personal and Vocational Evidence

Ms. Freeman was 43 years old on her 2022 alleged onset date and 45 years old at the hearing. (*See* Tr. 100). Ms. Freeman graduated from high school in 1997. (Tr. 739). In 1995, she began receiving special education services in English and math, including special instruction in regular classrooms and time in the resource room. (Tr. 738-39). During school, Ms. Freeman

2

participated in a work-study program. (Tr. 739). She has worked in the food service industry as a cafeteria worker, dishwasher in a school kitchen, and a food service assistant. (Tr. 281-84).

II.     **Relevant Medical and Other Evidence**[1]

The medical record primarily consists of treatment records for Ms. Freeman's physical impairments, including severe primary osteoarthritis in the left hip requiring a left hip replacement, and leg, knee, and foot pain. (*See, e.g.,* Tr. 385-88, 449-53, 458-59, 546-47, 556, 637-40). Few medical records speak to Ms. Freeman's mental impairments. She has a history of overanxious disorder for which her family physician prescribes hydroxyzine, an anti-anxiety medication. (*See* Tr. 390-91, 394, 403-04, 425, 725, 730). In high school, Ms. Freeman was developmentally delayed in reading, writing, and math, but was not deemed "mentally impaired" or "intellectually limited." (Tr. 738). In 2012, in connection with her prior disability applications, Ms. Freeman underwent a consultative psychological evaluation and formal psychological testing, including the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV). (Tr. 364). Testing revealed borderline intellectual functioning, "in range of mild impairment." (Tr. 365). During the examination, Ms. Freeman reported that she was working part-time in a cafeteria but could work full-time and was waiting for a full-time position to become available. (Tr. 362).

III.    **Applications for Disability and Administrative Hearing**

Noted above, Ms. Freeman applied for disability due to her physical impairments, including bilateral carpal tunnel syndrome and issues with her hip, knee, and foot. (Tr. 291). In an Adult Function Report dated September 19, 2022, Ms. Freeman reported she cannot count

---

[1] Ms. Freeman takes issue with the ALJ's evaluation of her mental impairment and the prior administrative medical findings and opinions that speak to that impairment. My review is limited to the evidence relevant to her claim.

change back, can pay attention for one to two hours at a time, and does not follow spoken instructions or handle stress well. (Tr. 306, 308-09). She endorsed issues with "understanding," but provided no context indicating what she had trouble understanding or the extent of the issue. (Tr. 308). In two subsequent Disability Reports, Ms. Freeman denied that her conditions had worsened, denied experiencing new impairments, and denied any change in her ability to perform daily activities. (Tr. 313-17, 321-24). In the most recent Disability Report, Ms. Freeman stated, "I was in special education in school. I had my left hip replaced on [May 17, 2022]. I had right foot surgery on [May 19, 2023]. I am currently in a boot. Based on my combined conditions, I am unable to complete sustained competitive employment." (Tr. 325).

In a pre-hearing brief to the ALJ, Ms. Freeman's counsel argued she cannot sustain the "concentration, persistence, or pace necessary for competitive employment" and will be off task throughout the day. (Tr. 349).

During the hearing, Ms. Freeman testified she cannot work because she has sharp pain in her left hip and lower back when standing. (Tr. 44, 51). She made no mention of borderline intellectual functioning or associated functional limitations.

The VE classified Ms. Freeman's past relevant work as a cook helper. (Tr. 54). The VE testified that a person of Ms. Freeman's age, education, and experience could not perform her past relevant work but could perform other light exertion jobs (including marker, routing clerk, and inspector and hand packager) if subject to the ALJ's stated restrictions. (Tr. 54-58). According to the VE, those light exertion jobs remain available even if the person cannot perform at a production-rate pace or interact with the public. (Tr. 58).

4

**IV.     Medical Opinions and Prior Administrative Medical Findings**

Noted above, on June 12, 2012, in connection with her prior disability applications, Ms. Freeman underwent a consultative psychological evaluation and formal psychological testing, performed by Stephen Meyer, Ph.D. (Tr. 361-66). During the interview, Ms. Freeman complained of migraine headaches and hives. (Tr. 362). She endorsed working part-time and stated she was able to work full-time and was waiting for a full-time position to become available. (*Id.*). She has never been fired, denied problems getting along with coworkers, supervisors, and authority figures and denied issues with following instructions at work and performing repetitive tasks. (*Id.*).

Ms. Freeman denied having panic attacks and mood swings, did not exhibit outward signs of anxiety, and reported sometimes becoming easily irritated or angry when something does not go right. (Tr. 362-63). During cognitive function testing, Ms. Freeman was alert, responsive, oriented, and not confused. (Tr. 363). She struggled with abstraction and verbal concepts but showed satisfactory attention and concentration, persistence, and pace and had "minimal difficulty understanding and following simple instructions" during testing. (Tr. 364).

Based on Ms. Freeman's self-reports, Dr. Meyer's observations during the interview, and the results of psychological testing, Dr. Meyer diagnosed a learning disability and borderline intellectual functioning, described as a mild impairment. (Tr. 365). Dr. Meyer determined Ms. Freeman can follow simple instructions and perform simple and moderately complex tasks in a low stress setting without strict production requirements and is limited to intermittent contact with the public and coworkers. (Tr. 365).

On January 26, 2023, state agency psychological consultant Kristen Haskins, Psy.D., reviewed Ms. Freeman's records (including Dr. Meyer's consultative examination report) and

5

determined she was not disabled. (Tr. 100-21). Dr. Haskins concluded Ms. Freeman can understand and remember one-to-three-step tasks, can complete simple tasks in a setting that do not require fast-pace work and where she can work away from the distractions of others, can occasionally interact superficially with others in a work setting, and can independently adjust to minor changes in the work setting but requires advanced notice of major changes. (Tr. 107-08). Dr. Haskins did not adopt the RFC from the 2013 decision but noted Ms. Freeman's functioning "continues to be very similar." (Tr. 109). On May 22, 2023, state agency psychological consultant Janet Souder, Psy.D., affirmed Dr. Haskins' findings. (Tr. 131, 141).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520, 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

6

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f).

### THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Freeman had not engaged in substantial gainful activity since May 16, 2022, the alleged onset date. (Tr. 21). At Step Two, the ALJ identified three severe impairments: left hip arthroplasty; obesity; and borderline intellectual functioning. (*Id.*). At Step Three, the ALJ determined Ms. Freeman's impairments did not meet the criteria of any listed mental impairment and did not show medical equivalence to any listed impairment. (Tr. 22).

At Step Four, the ALJ determined Ms. Freeman's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can frequently operate foot controls; occasionally climb ramps and stairs; can perform no climbing of ladders, ropes, or scaffolds; can occasionally stoop; can have no exposure to workplace hazards such as unprotected heights or dangerous, unprotected moving mechanical parts; and perform no occupational driving. The claimant can perform no more than four hours of standing and/or walking during the workday; is unable to crawl or kneel; can perform no balancing as defined by the *Selected Characteristics of Occupations* (SCO); and no crouching. The claimant is limited to performing simple, routine, repetitive tasks; with no more than occasional, routine changes in duties and the work setting.

7

(Tr. 24). The ALJ found Ms. Freeman could not perform her past relevant work. (Tr. 28). At Step Five, the ALJ determined Ms. Freeman could perform other jobs that exist in significant numbers in the national economy and concluded she was not disabled from May 16, 2022 through the date of the decision. (Tr. 29-30).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). "Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by

8

the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Freeman contends remand is warranted because the ALJ did not properly evaluate the state agency psychologists' prior administrative findings and did not evaluate Dr. Meyer's medical opinion at all. (ECF #8 at PageID 812). The Commissioner counters that the ALJ adequately explained how he considered the persuasiveness of the state agency psychologists' findings. (ECF #10 at PageID 826-28). In addition, the Commissioner argues that remand for the ALJ to consider Dr. Meyer's opinion is not necessary. (*Id.* at PageID 830).

9

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e). As part of that assessment, the ALJ *must* review *all* medical opinions and prior administrative findings and *explain* how persuasive he finds them. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ considers five factors to determine persuasiveness: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations require the ALJ to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions," the two most important factors. *See id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability is "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation" and consistency is "the extent to which the opinion is consistent with evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The ALJ's explanation should "generally include[] an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or prior administrative medical finding is with other evidence in the claim." *Id.* The reasons for the ALJ's conclusions must be stated in a manner that allows the reviewing court to "trace the path of the ALJ's reasoning" from evidence to conclusion. *Stacey v. Comm'r of Soc. Sec.*, 451 F.App'x 517, 519 (6th Cir. 2011). If the ALJ discusses both consistency and supportability and the discussion is

10

supported by substantial evidence, the Court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No. 1:20-cv-1888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

I.  **The ALJ adequately explained how persuasive he found the state agency psychologists' prior administrative medical findings.**

In Ms. Freeman's case, the ALJ considered the medical evidence, medical opinions, and Ms. Freeman's statements about how her impairments affect her functioning and her daily activities to determine the RFC. First, the ALJ documented Ms. Freeman's statements about the functional effects of her physical impairments. (Tr. 24). Notably absent from the record are statements about how her intellectual impairment affects her mental functioning. Then, the ALJ summarized Ms. Freeman's mental health impairments, stating:

> [T]he record reflects a history of borderline intellectual functioning, in the context of an alleged history of learning disorder, which was supported by [WAIS-IV] testing. The record shows no significant mental health treatment for mental health related symptomology, although the claimant did receive medications for "overanxious disorder" with no significant findings on any psychiatric or mental status examinations during the period at issue.
>
> * * *
>
> While the claimant was able to access treatment, manage activities of daily living, and even work parttime during the period at issue, the undersigned has incorporated appropriate limitations consistent with the claimant's history of cognitive functioning. Therefore, the undersigned finds the claimant capable of performing simple, routine, repetitive tasks; with no more than occasional, routine changes in duties and the work setting.

(Tr. 26-27).

The ALJ evaluated the state agency psychologists' findings of moderate limitations in all four areas of mental functioning, those being the abilities to (1) understand, remember, and apply information; (2) interact with others; (3) concentrate, persist, and maintain pace; and (4) adapt or

11

manage oneself. (*See* Tr. 23). He concluded the psychologists' assessments regarding Ms. Freeman's abilities to interact with others and concentrate, persist, and maintain pace were unpersuasive:

> [W]hile the undersigned has given some deference to the claimant's prior finding of borderline intellectual function in assessing both moderate limitations to understand, remember, or apply information and adapting or managing oneself, the undersigned has only found mild support for limitations in the remaining domains. As reflected herein, there is no significant functional limitation reflected in any psychiatric or mental status examination of record during the period at issue, with the claimant continuing to be able to work, albeit part-time, during the period at issue.

(*Id.*). The ALJ also reviewed the psychologists' RFC findings and found they were unpersuasive:

> The undersigned has also considered the State agency psychological consultants' opinions which initially found the claimant limited to 1-3 steps; able to complete tasks in a setting that does not have fast-pace demand and where she can work away from the distractions of others; able to occasionally, superficially interact in the work setting; and able to adjust to minor changes in the work setting and still complete an ordinary routine consistently on an independent basis, with major changes to be introduced in advance and then gradually phased in to allow the claimant time to adjust to the new expectations. This assessment was affirmed at reconsideration. The undersigned has found these assessments unpersuasive. As reflected above, there are no significant mental health related complaints during the period at issue, although intermittent medication management for overanxious disorder was noted. While the claimant has a history of borderline intellectual functioning, the claimant has been able to work, independently manage activities of daily living, and seek out and obtain treatment as needed. Therefore, the undersigned has deviated from these findings, and rather incorporated appropriate functional limitations consistent with the evidence of record for the period at issue as evaluated herein.

(Tr. 27-28) (cleaned up).

The ALJ's reasoning withstands scrutiny. The ALJ noted Ms. Freeman's reported work history, including part-time and full-time work during the period at issue. (Tr. 21). This finding has support in the record, specifically in a work history report Ms. Freeman completed as part of the application process. (Tr. 281-84). There, she described working part-time in a school kitchen from August 2002 to August 2007 and as a cafeteria worker from August 2005 to Spring 2019. (*Id.*). She

also endorsed working eight hours a day for five days a week as a food service assistant at a mental health center from Fall 2019 to May 16, 2022, the day before she underwent left hip surgery. (Tr. 281-84; *see also* Tr. 546). In November 2023 (after the period at issue), Ms. Freeman testified to working part-time as a home health aide where she fixes her clients' daily meals, manages their medications, helps care for their personal hygiene, and does household chores. (Tr. 21, 42). The ALJ also summarized Ms. Freeman's independence in her daily activities, noting:

> The claimant reported living alone in a home, maintaining a driver's license with no problems driving, and working as a home health aide. During a typical day, the claimant endorsed being able to go outside and pick up items that she can reach, was able to cook, wash dishes, clean her home, do laundry, care for her cat, and do yardwork at times. The claimant reported going to the grocery store once per day but had difficulty with that activity due to standing for long periods.

(Tr. 24-25).

While the ALJ did not use the terms "supportability" or "consistency," the written decision indicates the ALJ did consider those factors in determining the persuasiveness of the psychologists' opinions. *See Hardy v. Comm'r of Soc. Sec.*, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021) (the ALJ need not use the words "supportability" or "consistency" to show he considered the necessary factors). In terms of supportability, the ALJ emphasized the absence of significant abnormal findings on mental status and psychiatric examinations during the period at issue that might otherwise support the psychologists' findings. (Tr. 23). That, as detailed above, is an accurate assessment of the record evidence. The ALJ also pointed to Ms. Freeman's work during and after the period at issue, her independence in attending to daily activities, and her ability to seek out and obtain necessary medical treatment as inconsistent with the psychologists' findings that she cannot perform in a job requiring fast-paced work and is limited to occasional, superficial

13

interaction in the work setting. (*Id.*). Thus, the ALJ properly evaluated the state agency psychologists' findings in terms of supportability and consistency.

Ms. Freeman contends the ALJ's statement that she "has been able to work, independently manage activities of daily living, and seek out and obtain treatment as needed" is too conclusory to meet the ALJ's articulation requirement. (ECF #8 at PageID 815). Indeed, a "[s]ingle conclusory phrase," such as stating that the opinion is not consistent with the objective evidence, on its own is not a satisfactory explanation of the consistency factor under the regulations. *Bryan W. v. Comm'r of Soc. Sec.*, No. 1:22-cv-281, 2023 WL 5847649, at *5 (S.D. Ohio Sept. 11, 2023). As another district court in the Sixth Circuit has stated, "[i]t is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors could have been applied to the evidence that was presented." *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, 909 (E.D. Mich. Aug. 13, 2021). As such, the ALJ must "show his work," or, in other words, identify specific evidence in the record that explains why a particular opinion is not consistent with the evidence. *Id*; *see also Heather B. v. Comm'r of Soc. Sec.*, No. 3:20-cv-442, 2022 WL 3445856, at *3 (S.D. Ohio Aug. 17, 2022).

Contrary to Ms. Freeman's argument, the ALJ did not rely on a single conclusory statement to discount the state agency psychologists' opinions. Rather, he emphasized her ability to work during the period at issue, her daily activities, and her persistence in pursuing medical treatment, evidence that, in his view, showed Ms. Freeman was less functionally limited in her ability to interact with others and concentrate, persist, and maintain pace.

I decline to recommend remand on this basis.

14

### II. Dr. Meyer's Medical Opinion

#### A. The ALJ did not evaluate Dr. Meyer's medical opinion.

In stark contrast to the ALJ's treatment of the state agency psychologists' findings, the ALJ did not evaluate the persuasiveness of Dr. Meyer's opinion. The ALJ obliquely refers to Dr. Meyer's report, stating "the record reflects a history of borderline intellectual functioning, in the context of an alleged history of learning disorder, which was supported by the [WAIS-IV] testing." (Tr. 26). But the ALJ does not acknowledge that Dr. Meyer offered opinions on Ms. Freeman's mental functioning in connection with that testing. Nor does the ALJ address any of the material contained in the report, including Dr. Meyer's findings, Ms. Freeman's reported symptoms, or her statements about the effects of those symptoms on her mental functioning. The ALJ's failure to analyze Dr. Meyer's opinion violates the regulations directing the ALJ to analyze "all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

The Commissioner asserts remand is nevertheless unnecessary for two reasons. First, "the state agency psychologists already considered Dr. Meyer's report, and the ALJ already explained he nevertheless did not agree with the conclusions of the state agency psychologists." (ECF #10 at PageID 830). In other words, the Commissioner contends the ALJ need not evaluate a medical opinion if the state agency consultants reviewed the opinion and the ALJ explained why he rejected the consultants' findings. The Commissioner does not cite case law supporting this argument, which is unsurprising because it contravenes procedural regulations requiring the ALJ to articulate how persuasive he finds *all* the medical opinions in a claimant's case record. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

15

Second, the Commissioner opposes remand because "medical opinions that predate the disability onset date have limited relevance." (ECF #10 at PageID 830) (quoting *Hardy v. Comm'r of Soc. Sec.*, No. 24-5440, 2025 WL 1292181, at *4 (6th Cir. Feb. 6, 2025)). The Commissioner's attempt to excuse the ALJ's failure to evaluate Dr. Meyer's opinion by pointing out that the opinion was provided prior to Ms. Freeman's alleged onset date, and therefore, is not relevant to the period at issue, is equally unavailing. The Sixth Circuit does "not endorse the position that all evidence or medical records predating the alleged date of the onset of disability . . . are necessarily irrelevant or automatically barred from consideration[.]" *DeBoard v. Comm'r of Soc. Sec.*, 211 F.App'x 411, 414 (6th Cir. 2006). Rather, this circuit "recognize[s] that evidence . . . predating the onset of disability, when evaluated *in combination with later evidence*, may help establish disability." *Id.* (emphasis in original). Thus, the mere fact that Dr. Meyer authored his opinion before the alleged onset date does not necessarily render the opinion irrelevant.

More to the point, there is nothing to suggest the ALJ rejected Dr. Meyer's opinion on that basis and courts "may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Johnson v. Comm'r of Soc. Sec.*, 193 F.Supp.3d 836, 847 (N.D. Ohio June 15, 2016).

Here, the ALJ did not discount Dr. Meyer's opinion on the ground that it was of little relevance. Rather, he did not address the opinion at all. Under these circumstances, it is not possible to determine whether the ALJ ignored the opinion because it was not relevant to Ms. Freeman's current functional status. It bears repeating that it is the ALJ's obligation "in the first instance to show his or her work, *i.e.,* to explain in detail how the factors actually were applied in each case, to each medical source." *Hardy*, 554 F.Supp.3d at 909.

16

B.     **The ALJ's failure to evaluate Dr. Meyer's opinion is not harmless error.**

In general, courts review decisions from administrative agencies for harmless error. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Sixth Circuit has not addressed when an ALJ's failure to analyze a medical opinion for supportability and consistency can be excused as harmless error. *See Brooks v. Comm'r of Soc. Sec.*, No. 2:22-cv-158, 2024 WL 966560, at *6 (E.D. Tenn. Mar. 6, 2024). But under the former regulations governing the evaluation of medical opinions, the Sixth Circuit determined that when an ALJ does not strictly comply with legal procedures for evaluating opinions, such error may be harmless when: (1) the opinion is so patently deficient it could not be credited; (2) the opinion was actually adopted; or (3) the ALJ met the goal of these procedural safeguards, despite not strictly complying with the regulations. *Wilson*, 378 F.3d at 547. District courts in this circuit continue to apply that harmless-error standard under the current regulations. *See Musolff v. Comm'r of Soc. Sec.*, No. 1:21-cv-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022) (collecting cases). None of those circumstances are present here. Thus, remand is required for the ALJ to evaluate properly Dr. Meyer's opinion.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **REVERSE** the Commissioner's decision denying benefits and **REMAND** for additional proceedings consistent with this Report and Recommendation.

Dated: September 23, 2025

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　DARRELL A. CLAY
　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

17

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge. Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).